UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES of AMERICA ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JOHN MARVIN BALLARD ) <br> ) <br> Defendant. ) | 05-cr-00168-JCC <br> 06-cr-00283-JCC <br><br> **ORDER** |

On December 4, 2007, the Court heard argument on defendant John Ballard's motions:

1. to dismiss the superseding indictment in case number 06-cr-00283 for improper influence of the grand jury,

2. to unseal the grand jury record for the indictment,

3. to strike surplusage from the indictment,

4. to dismiss the indictment because Ballard is factually innocent,

5. to dismiss the indictment because the probation officer's instructions were illegal,

6. to dismiss the alleged violation of supervised release in case number 05-cr-00168 because the probation officer's instructions were illegal, and

1     7.    to suppress defendant's statements to the probation
2           officer because they were compelled in violation of the
3           Fifth Amendment.

4    Jan David Karowsky appeared on behalf of John Ballard;
5 Samuel Wong appeared for the government.

6    In an order dated December 12, 2007, the Court denied
7 Ballard's motions to dismiss the indictment for improper
8 influence of the grand jury, to unseal the grand jury record, and
9 to strike surplusage from the indictment.

10    Following further argument on January 7, 2008, and having
11 considered the arguments of counsel, the papers submitted, the
12 applicable law, and the record in this case, the Court now DENIES
13 Ballard's remaining motions: to dismiss the indictment because
14 Ballard is factually innocent; to dismiss the indictment and the
15 supervised release violations because the probation officer's
16 instructions were illegal; and to suppress Ballard statements.

17                          **I.    BACKGROUND**

18    In case number Cr. S-99-050 John Ballard was convicted by a
19 jury of interstate travel for the purposes of having sex with a
20 minor.  In November, 2001, he was sentenced to 63 months
21 imprisonment and three years of supervised release.  During the
22 term of his supervised release, in July, 2003, he made false

statements to his probation officer, for which he was indicted and convicted in case number Cr. S-05-168.  On February 17, 2006, he was sentenced to 15 months incarceration and a term of supervised release of 36 months in that case.  The same "Standard Conditions" of supervised release which had been imposed in Cr. S-99-050 were again imposed in Cr. S-05-168.  Conditions 2 and 3 of the "Standard Conditions" read as follows:

> 2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
>
> 3) the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer.

Ballard was released from custody on May 26, 2006.  He was flown directly to Sacramento where probation officers met him at the airport terminal.  At his request he was taken directly to the probation office where he was advised of the terms of his probation.  Ballard was then transported to a local facility called the Parolee Transitional Living Center (PTLC) where he was instructed to reside until he could find a suitable alternative.

Ballard had requested that he live with his mother, whose residence is in the Sacramento area.  Based on Ballard's prior

criminal history, the probation office determined that Ballard should not live with his mother.  As Ballard was without financial or other resources to procure alternative housing the only immediately available housing was at the PTLC.

Probation also determined that Ballard required strict supervision of his daily activities.  Standard Conditions of Supervision numbers 2 and 3 require the probationer to regularly report to the probation officer and to follow the officer's instructions and answer the officer's questions truthfully. Pursuant to these two conditions, probation required Ballard to plan his activities on a weekly basis with the officer and to keep a written journal, updated daily, of all his activities for the officer's review.  In addition, the officer required Ballard to report to her on a daily basis.  The same conditions had been imposed during Ballard's previous term of supervised release in July, 2003.  Ballard stated that he understood these conditions.

During Ballard's first week at PTLC his probation officer allowed him to go to each outside destination he requested.  On Friday, May 26, 2006, Ballard requested and was granted permission to attend mass on Sunday, May 28.  That Sunday, on the way back from mass, Ballard stopped at McDonald's for lunch. This particular restaurant has a playground frequented by

1   children.  According to Ballard he was there for two minutes,
2   just long enough to pick up a to-go order.  Ballard met with the
3   officer on May 30, and did not mention that he had stopped at
4   McDonald's on May 28, an activity neither planned nor approved,
5   nor did he disclose the event in his journal.
6       On May 31, Ballard visited a public library where he checked
7   out a book on child sexual psychology entitled <u>Harmful to Minors:
8   the Perils of Protecting Children From Sex.</u>  In his journal entry
9   for that day, he reported that he visited the library, and that
10  he had reserved a novel entitled <u>Plum Island</u>, but made no
11  disclosure in his journal of checking out the psychology book.
12      On June 1, 2006, Ballard informed the officer that he was
13  planning to go to a facility called Primary Care.  The officer
14  advised against the trip because of how long it would take if
15  Ballard did not arrive first thing in the morning, but the
16  officer did not otherwise object and Ballard decided to go.  As
17  the time approached for Ballard's return to PTLC the officer went
18  to the Primary Care facility to check on Ballard's progress
19  there.  When the officer found Ballard, he had a shopping bag
20  from a Tower Bookstore.  The officer directed Ballard to wait in
21  the Primary Care lobby while the officer reviewed the contents of
22  the bag.  Ballard went inside, but when the officer entered the

1  facility a few minutes later, Ballard could not be found.

2  In the bag the officer found the library book on child
3  sexual psychology, a fashion magazine for children entitled <u>Vogue
4  Bambini</u>, and the Sacramento News & Review.  The probation officer
5  then went to the nearby Tower Bookstore and reviewed the security
6  camera video tape which depicted Ballard purchasing the
7  periodicals.  Further investigation revealed that the psychology
8  book had been checked out of the library the previous day on May
9  31.

10  Ballard called to advise that he was done at Primary Care
11  and was returning to PTLC.  The officer met Ballard there and
12  searched Ballard's possessions at PTLC.  Among those possessions
13  were lists of sex offenders, websites for children's movies,
14  magazine photos of children, newspaper clippings, correspondence
15  with another sex offender, and a list of dispositions for other
16  sex offenders' cases.  Ballard was instructed to complete his
17  journal entry for the day and submit the journal to the officer.
18  The journal entry did not include the stop at Tower Bookstore or
19  the purchases made there.

20  Ballard was arrested on June 7, 2006, for violating the
21  terms of his supervised release.  The Form 12 supporting the
22  arrest charged five violations: (1) On May 28, 2006, Ballard did

not follow the officer's instructions when he stopped at McDonald's on the way back from mass; (2) On June 1, 2006, Ballard did not follow the officer's instructions when he went to Tower Bookstore; (3) Ballard made false statements to the officer, in violation of 18 U.S.C. § 1001(a)(3), when he omitted the McDonald's stop from his journal entry of May 28, 2006; (4) Ballard made false statements to the officer when he omitted his acquisition of the child sexual psychology book from his journal entry of May 31, 2006; (5) Ballard made false statements to the officer when he omitted the stop at Tower Bookstore from his journal entry of June 1, 2006.

On July 13, 2006, Ballard was indicted in case Cr. S-06-283 for the alleged false statements which had been charged in the Form 12.  Following an initial hearing on Ballard's challenges to the indictment, a two-count superseding indictment was returned on September 6, 2007.  Count One alleges a violation of 18 U.S.C. § 1001, charging that Ballard did not report in his journal that he went to the library to check out the book on child sexual psychology, instead reporting only that he went to the public library to reserve Plum Island when in fact he went there to check out the book on child sexual psychology.  Count Two also alleges an 18 U.S.C. § 1001 violation, charging that Ballard did

not report in his journal that he had purchased a children's fashion magazine from Tower Bookstore.

As already described the Court dismissed three of Ballard's motions on December 12, 2007. The remaining four motions are now before the Court.

## II. LEGAL STANDARD

**A. Factual Innocence**

An indictment returned by a lawful grand jury is valid on its face and is enough to compel a trial of the charges on the merits. United States v. Williams, 504 U.S. 36, 54 (1992). A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue. Fed. R. Crim. P. 12(b)(2).

In a pretrial motion under Federal Rule of Criminal Procedure 12(b)(2), the Court is not to consider evidence which does not appear on the face of the indictment. United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1995). A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence. Id. The Federal Rules of Criminal Procedure do not provide for a pre-trial consideration of the available evidence like the summary judgment procedure in Rule 56 of the Federal Rules of Civil Procedure. Id (citing United States v.

Critzer, 951 F.2d 306, 307 (11th Cir. 1992)).  A defendant is entitled to a trial on the charges of the indictment but not to a pre-trial finding of factual innocence.  See Jensen, 93 F.3d at 669.

**B.   Power of the Probation Officer**

Under 18 U.S.C. § 3603, Congress has granted probation officers broad statutory authority to supervise offenders and to enforce a sentencing court's terms and conditions of supervised release and probation.  United States v. Stephens, 424 F.3d 876, 880 (9th Cir. 2005).  Where the court makes the determination of whether a defendant must abide by a condition, it is permissible to delegate to the probation officer the details of where and when the condition will be satisfied.  Id.  A probation officer may not decide the nature or extent of the punishment imposed upon a probationer because the Constitution, under the Article III power over "cases and controversies," reserves for the court the right to impose punishment provided by law.  Id at 881 (citing United States v. Pruden, 398 F.3d 241, 250 (3d Cir. 2005) and Ex parte United States, 242 U.S. 27, 41-42 (1916)).

**C. Fifth Amendment Right to Remain Silent**

Under the Fifth Amendment, if an individual is subjected to a practice that denies him a free choice to admit, deny, or to

refuse to answer, then any statement he makes is considered involuntary and cannot be used in a criminal proceeding. Garner v. United States, 424 U.S. 648, 657 (1976)(citing Lisenba v. California, 314 U.S. 219, 241 (1941)). The Ninth Circuit has held that a probationer who provides incriminating information to his probation officer in response to questions from that officer, and does so pursuant to a probation condition that requires him to "promptly and truthfully answer all reasonable inquiries" from the officer or face a revocation of his probation, is "compelled" to give incriminating evidence within the meaning of the Fifth Amendment. United States v. Saechao, 418 F.3d 1073 (9th Cir. 2005). However, proper invocation of the Fifth Amendment privilege against compulsory self-incrimination allows a witness to remain silent, but not to swear falsely. Brogan v. United States, 522 U.S. 398, 404 (1998) (citing United States v. Apfelbaum, 445 U.S. 115, 117 (1980)).

**IV. DISCUSSION**

**A. Factual Innocence**

Ballard argues that he is factually innocent of the violations alleged in the indictment. He argues that he did not conceal the fact that he checked out the book on child sexual psychology nor the fact that he purchased the magazine because he

1  in fact revealed those facts when he surrendered the book and
2  magazine to the officer.
3       As to the count related to the magazine, the factual
4  circumstances recited appear to raise a serious doubt as to
5  whether the government can show an intent on Ballard's part to
6  conceal the fact that he purchased the magazine.  It seems
7  instead to support a conclusion that he was well aware, at the
8  time he made his journal entry, that the officer knew he had
9  purchased the magazine.  The factual circumstances relevant to
10 the knowledge of the officer, however, come chiefly from the Form
11 12 descriptions of the alleged supervised release violation and
12 not from the indictment.  The facts related to the recovery of
13 the shopping bag and its contents do not appear in the
14 superseding indictment.  As such the Court may not consider them
15 on pretrial motion.  See Jensen, 93 F.3d at 669.  It may well be
16 that if those are the facts established at trial, that the
17 government's case may fail in the face of a Rule 29 motion.  At
18 this stage, however, the Court may not dismiss the indictment
19 which is valid on its face.  See Williams, 504 U.S. at 54.
20      As to the count related to the library book, Ballard's
21 concealment argument is inapposite as his journal entry failing
22 to disclose his acquisition of the book was made before probation

had any knowledge of the book.  In any event, the facts relied upon by Ballard are extrinsic to the indictment and the Court may not dismiss in the face of a valid indictment.  See id.

**B. Legality of Probation Officer's Directions**

Ballard argues that the probation officer's strict reporting instructions were effectively a punishment imposed by the probation officer and not by the court, contrary to Article III. See Stephens, 424 F.3d at 881 (holding that the sentencing court could not delegate to the probation officer the number of drug tests to which the defendant must submit).  According to Ballard the reporting instructions functioned very much like the drug test in Stephens in that, like the drug tests, stringent reporting put Ballard in jeopardy of a new prosecution, as demonstrated by the original indictment in which he was charged for failing to mention in his journal that he stopped at MacDonald's for take-out and for failing to mention that he had purchased a magazine.  Cf. id at 883.  The number of reports Ballard was required to make, so his argument goes, should have been determined by the court, not by the probation officer.

In response the government argues that the power of the probation officer "cannot be overstated."  The standard conditions of supervised release and 18 U.S.C. § 3603 provide

ample authority to justify the probation officer's instructions for Ballard.

One distinction between Stephens and this case is that drug testing is a mandatory condition under 18 U.S.C. § 3563. See id at 883. Section 3563 explicitly requires that the drug testing be ordered by the court. Time and manner of reporting to the probation officer is not mandated by statute, and the conditions of that reporting are not assigned by statute to the court for determination. Another distinction is that the reporting requirements, unlike drug testing, represent the core of the relationship between the probation officer and the defendant.

Either of these distinctions is sufficient to justify forbearance on the Court's part from extending the rule of Stephens to the reporting requirements of a person on supervised release. Requiring the probation officer to seek the Court's micro-management of a condition as basic as reporting to the officer would not only be practically untenable but also undermine Congress's intention in § 3603 to bestow upon the probation officer "broad ... authority to supervise offenders and to enforce a sentencing court's terms and conditions of supervised release." Id at 880. The reporting requirements that the probation officer imposed on Ballard were justified by law.

1 His motions to dismiss the supervised release violations and the
2 superseding indictment for the illegality of those requirements
3 must be denied.

**C. Motion to Suppress Ballard's Statement**

Ballard relies on Saechao to argue that when he made the culpable statements he was under a classic penalty situation. See Saechao, 418 F.3d at 1075. Unfortunately, Ballard misinterprets Saechao.

Saechao makes inadmissible a defendant's inculpatory statements where the defendant's silence will be met with a penalty. See id. However, Saechao cannot be read to extend to a defendant's false material statements. In contrast, the Supreme Court has expressed quite explicitly that the Fifth Amendment will not protect a defendant from his own lies. See Brogan, 522 U.S. at 404-405. Brogan can likewise be distinguished from Ballard's case in that Brogan was not in the kind of penalty situation Ballard faced. Cf. id.

Moreover, Ballard's penalty situation is not the same as Saechao. Ballard's truthful answer would not clearly have resulted in a penalty. Cf. Saechao, 418 F.3d at 1075 (where the defendant admitted possessing a rifle after having been convicted of a felony). Had Ballard told the truth, questions as to his conditions of supervised release might have been raised, but he would not have admitted the commission of a separate crime. At best, the probation officer might have been better able to

oversee Ballard's rehabilitation.  The false answer that Ballard gave simply thwarted the probation officer in her duties without saving Ballard from any self-incrimination.  The Fifth Amendment cannot be used to protect Ballard from his false statements, only from his inculpatory honesty.  See id and Brogan, 522 U.S. at 404.  His statements cannot be suppressed.

### III.  CONCLUSION

For the reasons stated above, Ballard's motions to dismiss the indictment and the supervised release violations and to suppress his statements are DENIED.  The Court cannot dismiss an indictment that is valid on its face.  The probation officer's instructions to Ballard were authorized by law and the standard conditions of Ballard's supervised release.  The Fifth Amendment cannot be used to protect Ballard from his own dishonesty.

IT IS SO ORDERED.

Date: January 23, 2008        By _____
                                 D. LOWELL JENSEN
                                 United States District Judge