1  McGREGOR W. SCOTT
   United States Attorney
2  SAMUEL WONG
   Assistant U.S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, California 95814
4  Telephone:  (916) 554-2772

5

6

7               IN THE UNITED STATES DISTRICT COURT FOR THE

8                    EASTERN DISTRICT OF CALIFORNIA

9

10 UNITED STATES OF AMERICA,      )   No. CRS-05-168 JCC
                                  )   No. CRS-06-283 JCC
11             Plaintiff,         )
                                  )
12      v.                        )   PLAINTIFF'S TRIAL BRIEF
                                  )
13 JOHN MARVIN BALLARD,           )   Date:  May 5, 2008
                                  )   Time:  9:00 a.m.
14             Defendant.         )   Court:  Hon. John C. Coughenour
   _____)

15

16      Plaintiff United States of America respectfully submits this

17 memorandum as its trial brief for the combination evidentiary

18 hearing on the petition to revoke defendant John Marvin Ballard's

19 supervised release in Case No. CRS-05-168 JCC and the criminal

20 trial against Ballard in Case No. CRS-06-283 JCC presently set

21 for May 5, 2008.

22 I.   THE TWO CHARGING DOCUMENTS AGAINST BALLARD

23      1.   The Petition To Revoke Ballard's Supervised Release

24      By petition filed on June 7, 2006, Probation Officer Lori

25 Koehnen sought to revoke Ballard's supervised release based on

26 the following alleged violations:

27      1.   Failure to follow the probation officer's instructions

28 to go to church mass and return to the Parole Transitional Living

                                  1

Center ("PTLC"), a halfway house, with no additional stops by visiting McDonald's Restaurant, 2331 Broadway, Sacramento, and thereby violating his curfew.

2.   Failure to follow the probation officer's instructions to go directly to the Primary Care health clinic and back to the PTLC with an authorized lunch stop at the nearest fast food restaurant to Primary Care.  Instead, Ballard went to the Tower Books store at 1600 Broadway where he purchased the <u>Vogue Bambini</u> magazine of children modeling fashion clothing.

3.   False statements based on Ballard's false journal entry where he omitted his stop at McDonald's Restaurant on May 28, 2006.

4.   False statements based on Ballard's false daily journal entry that he visited the Sacramento Public Library on May 30, 2006, to reserve a book titled <u>Plum Island</u> by Nelson DeMille, when, in fact, he knew that he visited the library to check out the book <u>Harmful to Minors - The Perils of Protecting Children From Sex</u> by Judith Levine.

5.   False statements based on Ballard's false journal entry where he omitted his stop at Tower Books store to purchase the <u>Vogue Bambini</u> magazine on June 1, 2006.

2.   <u>The Superseding Indictment</u>

The Superseding Indictment ("Indictment") filed on September 6, 2007, charges Ballard with two violations of 18 U.S.C. § 1001(a)(1) -- knowingly and wilfully using a trick or scheme to conceal or cover up a material fact.  Both counts are preceded with five numbered paragraphs under the heading "Introductory Allegations".  The first three paragraphs describe some of

2

1   Ballard's prior criminal history in the area of child sex crimes.
2   Paragraph nos. 4 and 5 described Ballard's obligation, while
3   under supervised release, to report to his probation officer,
4   follow the instructions of his probation officer, and report his
5   daily activities in a written journal to his probation officer.

6        Count One of the Superseding Indictment alleges that Ballard
7   knowingly and wilfully concealed and covered up the material fact
8   from his probation officer that he visited the Sacramento Public
9   Library on May 30, 2006, and checked out a book titled <u>Harmful to</u>
10  <u>Minors:  The Perils Of Protecting Children From Sex</u> by Judith
11  Levine, a book that advocates allowing children to engage in sex,
12  while reporting to his probation officer in his daily journal
13  that, on May 30, 2006, he visited the library to order the book
14  titled <u>Plum Island</u> by Nelson DeMille.

15       Count Two of the Superseding Indictment alleges that Ballard
16  knowingly and wilfully concealed and covered up the material fact
17  from his probation officer that he visited the Tower Bookstore on
18  June 1, 2007, at approximately 12:38 p.m., and purchased a <u>Vogue</u>
19  <u>Bambini</u> magazine containing numerous photographs of young minor
20  females, while reporting in his daily journal that he was at the
21  Primary Care health clinic at that time.

22      3.  <u>The Law Applicable To The Charges In The Indictment</u>

23       In order to convict Ballard of either Counts One or Two, the
24  United States must prove each of the following elements beyond a
25  reasonable doubt with respect to that charge:

26       First, the defendant concealed or covered up a fact by
27      trick or scheme;

28       Second, the fact was material;

1    Third, the defendant did so knowingly and willfully;

2    Fourth, the defendant had a legal duty to disclose the

3 fact; and

4    Fifth, the material fact related to a matter within the

5 jurisdiction of the United States Probation Office, which is

6 part of the judicial branch of the government of the United

7 States.

8 Fed. Crim. Jury Instr. 7th Cir. 1001[1] (1999) (modified); Tenth

9 Circuit Pattern Criminal Jury Instruction 2.46 (2005) (modified).

10  A concealed or covered up fact is material if knowledge of

11 the fact is capable of influencing or affecting the United States

12 Probation Office's decisions or activities.  The concealed or

13 covered up fact need not have actually influenced the United

14 States Probation Office for it to be material.  See, e.g., United

15 States v. Boone, 951 F.2d 1526, 1545 (9th Cir. 1991); United

16 States v. Rodriquez-Rodriquez, 840 F.2d 697, 700 (9th Cir. 1988);

17 United States v. Vaughn, 797 F.2d 1485, 1490 (9th Cir. 1986); 9TH

18 CIR. CRIM. JURY INST. 8.66 (2003) (modified).

19  If the concealed or covered up fact is material, it is not a

20 defense that the government agency, in fact, knew of the

21 information that the defendant attempted to conceal or cover up.

22 See e.g., United States v. Gaudin, 515 U.S. 506, 512 (1995);

23 United States v. Goldfine, 538 F.2d 815, 820-21 (9th Cir. 1976);

24 United States v. McBane, 433 F.3d 344, 350-51 (3rd Cir. 2005).

25   4. The Burden Of Proof To Revoke Ballard's Supervised

26     Release

27  The prosecution's burden of proof in establishing a

28 supervised release violation is "by a preponderance of the

4

1   evidence", <u>see</u> 18 U.S.C. § 3583(e)(3), and hearsay evidence may

2   be considered during a revocation hearing, <u>see United States v.</u>

3   <u>Martin</u>, 984 F.2d 308, 310-11 (9th Cir. 1993).

4          5.   <u>The Prosecution's Evidence To Be Presented At Trial</u>

5          To the extent that Charges Two, Four, and Five of the

6   petition to revoke Ballard's supervise release overlap with the

7   new criminal charges in the Indictment, the parties have agreed

8   that the evidence presented at the trial can be considered by the

9   Court in weighing the merits of the petition.  The parties

10  anticipate an additional evidentiary hearing after the trial to

11  put on additional evidence concerning allegations in the petition

12  that are outside the scope of the trial.

13         As demonstrated below, at trial, the United States will

14  prove that Ballard, a longtime child sex offender, concealed and

15  covered up from his probation officers the actions he took to

16  feed his sexual interest in very young girls.  The United States

17  will prove that Ballard had a duty to report in his daily journal

18  the dates and times, and purpose of places that he visited.  The

19  United States will establish that concealed and covered up facts

20  were material in that they could have had an impact on the manner

21  in which his probation officers supervised him and the steps that

22  the officers would have taken to protect the community.

23              A.   <u>The Prosecution's Witnesses</u>

24                        <u>Lori Koehnen</u>

25         Senior Probation Officer Lori Koehnen will testify and

26  establish that:

27         1.   Koehnen is the probation officer designated as the sex

28  offender specialist for the probation office in this district.

She is familiar with the methods and practices of child sex crimes offenders based on her training and experience.  During her testimony, she will offer her expert opinion regarding the significance of acts committed or performed by Ballard.  An expert may testify if she has "specialized knowledge," is qualified based on "knowledge, skill, experience, training, or education," and the expert's testimony "will assist the trier or fact to understand evidence or to determine a fact in issue." Fed.R.Evid. 702.  The role of the district court as a "gatekeeper" is to determine if the expert opinion is reliable and relevant to the case at hand.  Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999).

2.    Koehnen was assigned to supervise Ballard upon his release from the Federal Correctional Institution in Ashland, Kentucky, on May 26, 2006, after completing his fifteen-month sentence on his 2005 conviction for making a false statement to another probation officer.

3.    Ballard had a long criminal history of actual and attempted child sexual exploitation, including a federal felony conviction in 1987 for transportation of a visual image of a minor engaged in sexually explicit conduct, and a federal felony conviction for traveling in interstate commerce in 1998 to have sex with a minor.  Ballard also committed two previous supervised release violations in 2003 based on:  (1) his attempted association with a convicted child molester for the purpose of facilitating Ballard's access to children for sexual purposes; and (2) his use of a computer in violation of the terms of his supervised release to view images of young girls.

4.   Upon his release from FCI Ashland, Kentucky, to Sacramento on the Friday before the Memorial Day Holiday, Ballard had no place to stay and no funds to pay for lodging or food. With Ballard's express written consent, Koehnen arranged for lodging and food for Ballard at the PTLC.  The PTLC is not a punishment facility.  The PTLC is a privately-run residential facility located a few blocks from 2700 Broadway that contracts with the state and federal governments to house homeless convicted offenders, including sex offenders.

5.   Ballard was sufficiently composed, attentive, and alert when he acknowledged in writing that he understood the conditions of his supervised release.  Standard Condition of Supervision No. 2 imposed by the Court obligates Ballard to "report to the probation officer", while Standard Condition of Supervision No. 3 requires Ballard to "answer truthfully all inquiries of the probation officer and follow the instructions of the probation officer."  Together with the authority given to probation officers under 18 U.S.C. § 3603 to carry out their duties, these conditions authorized Koehnen to "use all suitable methods" to keep informed of Ballard's conduct and condition, and aid Ballard in bringing about improvements in his conduct and condition. Consistent with Standard Condition Nos. 2 and 3, and her authority under § 3603, Koehnen instructed Ballard that he would be required to plan his weekly activities one week ahead of time, maintain a journal of those activities (date, time, and activity at each location visited) and that he would be speaking to his probation officer on a daily basis.  He agreed to these instructions and did not question the reason for the

1  instructions.

2      6.   Ballard voluntarily agreed to abide by the rules
3  applicable to all PTLC residents, including the curfew rules set
4  forth by PTLC and his parole officer.

5      7.   Ballard did not object at the time to any curfew or
6  restrictions placed on his movement by the PTLC and/or his
7  probation officer.  During his approximate one week stay at PTLC,
8  Koehnen granted <u>all</u> of Ballard's for visits outside of PTLC.

9      8.   On June 1, 2006, Officer Koehnen went to Primary Care,
10 a health clinic at 4600 Broadway, which is <u>east</u> of the PTLC, to
11 check whether Ballard had reported there as she directed him.
12 Initially, she could not find Ballard at Primary Care.  Later,
13 she found at Primary Care Ballard in possession of a Tower Books
14 store bag containing a Sacramento Public Library book, <u>Harmful to</u>
15 <u>Minors - The Perils of Protecting Children From Sex</u>, and a <u>Vogue</u>
16 <u>Bambini</u> magazine in the Italian/English languages containing
17 photographs of young children modeling fashion clothing and
18 swimwear.  Koehnen directed Ballard to remain in a waiting room
19 at Primary Care while she walked a short distance away to talk to
20 Probation Officer John Poglinco regarding her discovery.  When
21 the probation officers returned to the waiting room a mere few
22 minutes later, Ballard was gone.

23     9.   Koehnen and Poglinco then visited the Tower Book Store
24 located at 1600 Broadway, which is about one mile <u>west</u> of the
25 PTLC.  At the Tower Bookstore, the officers learned that Ballard
26 purchased the <u>Vogue Bambini</u> magazine there at approximately 12:39
27 p.m. and that the transaction was captured on the store's
28 videotape surveillance system.

1    10.  On June 1, 2006, Probation Officers Koehnen and

2  Poglinco conducted a search of Ballard's property at PTLC.  The

3  officers found, <u>inter alia</u>, in Ballard's property:  a list of

4  "Franchise Ideas" that would give him access to young children; a

5  list of sex offenders and a description of their criminal cases;

6  websites for children's movies; and a folder and a separate

7  envelope both containing magazine, newspaper, and catalog

8  photographs depicting pictures of young girls.  The envelope also

9  contained a magazine advertisement page that featured several

10  medications available through Internet sales, including Viastate,

11  a "Male performance formula.  Naturally boost testosterone levels

12  safely and effectively.  Increases sex drive."

13    11.  Ballard did not mention to Officer Koehnen or write in

14  his journal entry for June 1, 2006, that he stopped at the Tower

15  Books Store, 1600 Broadway, Sacramento, where he purchased the

16  <u>Vogue Bambini</u> magazine.  Ballard's visit to Tower Books was an

17  unauthorized deviation from his trip to Primary Care.

18    12.  Ballard's daily journal entry for May 30, 2006,

19  indicates that he visited the Sacramento Public Library for the

20  purpose of reserving the book <u>Plum Island</u> by Nelson Demille.  The

21  book and the receipt that Koehnen confiscated from Ballard

22  indicated that he checked out the book from the library on May

23  30, 2006.

24    13.  Koehnen read the book, <u>Harmful to Minors - The Perils</u>

25  <u>of Protecting Children From Sex</u>, and determined that the book

26  advocates allowing children to learn about and engage in sex.

27  Koehnen believes that it would be detrimental for Ballard to read

28  the book as it helps him rationalize his view that young girls

9

1  are legitimate sex objects.

2      14.  On June 12, 2006, PTLC part-owner George Bernard

3  provided to Koehnen a handwritten addressed envelope and a two-

4  page letter dated May 28, 2006, that Ballard sent to convicted

5  and incarcerated child sex offender Kenneth Christian.  Ballard's

6  letter was addressed to the Yolo County Sheriff's Department

7  complex that is adjacent to the county jail.  The letter was

8  returned to the PTLC as undeliverable.  Bernard read the letter

9  and notified Koehnen because Ballard's letter indicated that

10  Ballard was on the prowl for sex with young girls.  Ballard's

11  letter stated:

12      Well, I'm anxious to hear from you.  I hope you're well.
        You'll need to write me at the General Delivery address for
13      now through my friend John.  His address is John Ballard,
        General Delivery, Sacramento, CA 95814.  Be sure and send
14      any lists, addresses, pictures, "phone numbers, and all the
        favors I owe you so I can start on them.  I need to contact
15      "You Know Who" right away.  My tongue needs to taste that
        right away.

16
                           *      *      *
17
        My flight was great.  There were some real beauties at
18      the airport.  There was one adorable girl on the plane with
        me.  I wanted to join the mile-high club with here [sic:
19      her] She looked so delicious.  In fact, Columbus, Ohio, had
        quite a few good-looking girls to court and woo.
20

21      15.  Koehnen views Ballard as a high risk pedophile, who

22  poses an extreme danger to children in the community.  Ballard

23  believes that he does not need help as child molestation is not

24  harmful to children, if done in a consensual manner.

25      16.  Had Ballard, a longtime child molester, accurately

26  disclosed in his daily journal that:  (1) he visited the library

27  to obtain a book that advocated allowing children to engage in

28  sex; and (2) he visited the Tower Bookstore to purchase a

                                  10

magazine featuring photographs of young females in fashion
clothing, Koehnen would have warned and counseled him that he was
treading on dangerous ground.  Koehnen would have designed a
program for Ballard to insulate him from activities that would
titillate his compulsion for sex with young girls.

<u>John Poglinco</u>

Probation Officer John Poglinco would testify and establish
that:

1.    Poglinco assisted Koehnen in supervising Ballard on
several occasions, including meeting Ballard at the Sacramento
airport upon his arrival from Ashland.  Poglinco witnessed
Ballard's acknowledgment of his conditions of supervised release.

2.    On May 31, 2006, Ballard provided to Poglinco his daily
journal which included the entry that he visited the library on
May 30, 2006, to reserve the book <u>Plum Island</u>, but concealed the
fact that he checked out the book <u>Harmful to Minors:  The Perils
Of Protecting Children From Sex</u>.  Had Ballard disclosed that he
checked out the <u>Harmful to Minors</u> book, Poglinco would have
warned Koehnen of that fact.

3.    On June 1, 2006, Poglinco and Koehnen searched for
Ballard at the Primary Care health clinic but could not locate
him there in the early afternoon.  Later, Poglinco and Koehnen
drove back to Primary Care where Poglinco saw Ballard standing
outside the clinic.  Koehnen went ahead alone to investigate
Ballard while Poglinco parked the car.  When the officers went to
find Ballard in the waiting room where Koehnen had asked Ballard
to wait, Ballard was not there.

4.    Poglinco investigated Ballard's purchase of the <u>Vogue</u>

11

1  <u>Bambini</u> at Tower Books.   Poglinco also participated in the search
2  of Ballard's property at the PTLC.

3                            <u>Terry Sherbondy</u>

4       Probation Officer Terry Sherbondy would testify and
5  establish that:

6       1.    In July 2003, Sherbondy supervised Ballard upon his
7  release from federal prison.   Sherbondy directed Ballard to
8  prepare a daily journal of the dates and times, and purpose of
9  the places that he visited.   In 2005, Ballard was convicted for
10 making a false statement to a probation officer.

11                           <u>Gerry Calderon</u>

12      Sacramento Public Library Technology Manager Gerry Calderon
13 will testify and establish that:

14      1.    Ballard checked out the book, <u>Harmful to Minors:  The</u>
15 <u>Perils Of Protecting Children From Sex</u> on May 30, 2006, from the
16 Sacramento Public Central Library.   On May 30, 2006, the Central
17 Library had on its shelf and available for checkout the book <u>Plum</u>
18 <u>Island</u>.   No one, including Ballard, checked out <u>Plum Island</u> on
19 May 30, 2006.

20                       <u>Sandra Campbell-Carter</u>

21      Yolo County Sheriff's Corrections Records Shift Supervisor
22 Sandra Campbell-Carter will testify and establish that:

23      1.    She is designated as one of the custodians of record
24 for the Yolo County Jail.   The letter that Ballard sent to
25 Kenneth Christian on May 30, 2006, at 41973 Gibson Road,
26 Woodland, California, was addressed to an old address for the
27 Yolo County Sheriff's Administration Building, which is adjacent
28 to the Yolo County Jail.   The address for the administration

                                  12

building was changed to four digit number, 2500 Gibson Road, on August 1, 2004, when the City of Woodland incorporated that area of land into the city.  It is a common error for mail intended for Yolo County Jail inmates to be incorrectly addressed to the sheriff's administration address.

2.    Kenneth Christian was temporarily housed at the Yolo County Jail from May 5-19, 2006, to facilitate his appearance at a court hearing to civilly commit him into custody as a sexually violent predator.  According to the jail records, Christian was previously convicted for lewd sexual acts against a minor.

3.    Mail that is addressed to an inmate who is no longer in the custody of the Yolo County Jail is not forwarded to the inmate, but is returned to the sender.

<u>George Bernard</u>

PTLC part-owner George Bernard will testify and establish that:

1.    Bernard and his brother operate the PTLC, which provides lodging and food to recently released prisoners, including sex crimes offenders.

2.    Ballard became a client of the PTLC on May 26, 2006. On that date, Ballard agreed to abide by the rules of the PTLC, which included curfews and the search of mail addressed to the client but sent to the PTLC.

3.    On or about June 9, 2006, Bernard received a letter addressed to "Kenneth Christian" that was "returned to sender" at the PTLC address.  Consistent with the PTLC's policy to search incoming mail, and also because Bernard could not determine who had sent the letter based on his review of the outside of the

13

envelope, he opened the envelope and read the letter.  Bernard
determined that Ballard was author of the letter and notified
Probation Officer Koehnen because the letter discussed Ballard's
desire to have sex with young girls.

Joseph Merydeth

California Department of Justice Questioned Documents
Examiner Joseph Merydeth will testify and establish that:

1.    Merydeth is qualified to perform handwriting comparison
analyses to determine authorship of handwritten documents.

2.    Merydeth compared known handwriting exemplars from
Ballard with three questioned handwritten documents.  The three
questioned documents include, the envelope and letter to Kenneth
Christian, the list of "Franchise Ideas", and the list of child
sex offenders and a description of their criminal acts.  Merydeth
determined Ballard wrote all three documents.

Joe Arch

Joe Arch would testify and establish that:

1.    In June 2006, Arch was employed as a store security
staff member at the former Tower Books Store at 1600 Broadway,
Sacramento.  He was responsible for operating store surveillance
security cameras video recording equipment.  The clock for the
store video recording equipment was approximately one hour behind
or late as the video recorder clock had not been reset after the
change in time to Daylight Savings Time in April 2006.

Amanda Sambrano

Amanda Sambrano would testify and establish that:

1.    On June 1, 2006, Sambrano was working a sales clerk at
the former Tower Books Store.  She remembers that a white middle

14

1  aged man purchased a <u>Vogue Bambini</u> magazine.  She recalls the

2  transaction because she thought that it was odd for a person of

3  that background to purchase the magazine.  She will identify

4  herself and the customer on the store surveillance videotape of

5  the purchase.

6

7  DATED:  May 1, 2008                    McGREGOR W. SCOTT
                                         United States Attorney
8

9                                        BY: <u> /s/ Samuel Wong        </u>
                                             SAMUEL WONG
10                                           Assistant U.S. Attorney

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28